FIZER v ONEKAMA CONSOLIDATED SCHOOLS

Docket No. 77-1696. Submitted March 13, 1978, at Lansing.—Decided May 23, 1978. Leave to appeal applied for.

Charles Fizer, Ann Fizer, and others brought an action against the Onekama Consolidated Schools and the Municipal Finance Commission of the State of Michigan to enjoin the school district from proceeding with the proposed sale of bonds for financing construction of school buildings. Issuance of such bonds had previously been disapproved in referendum elections on three separate occasions. The Municipal Finance Commission was dismissed, and summary judgment was granted by the Manistee Circuit Court, Charles A. Wickens, J., in favor of the plaintiffs, enjoining the sale of the bonds. The school district appeals by leave granted. The question on appeal is whether the issuance of school district bonds is always dependant upon prior voter approval. *Held:*

Prior approval by the electorate is not required by the Michigan Constitution or by statute where a school district issues bonds which are in compliance with statutory requirements regarding debt limitations. The judgment in favor of the plaintiffs, enjoining the sale of the bonds, was erroneous, as the bond issue was within the district's constitutional and statutory authority.

Reversed.

Constitutional Law—Schools and School Districts—Bond Issues —Approval by Electorate—Statutes.

Corporate public units are granted express power under the Constitution to borrow money subject only to other pertinent constitutional provisions and legislative enactments; approval by the electorate is not required for a school district to issue bonds to finance construction where the total bonded indebtedness of the district does not exceed 5 percent of the state equalized valuation of all property located within the district (Const 1963, art 9, § 13, MCL 340.77a; MSA 15.3077[1], now MCL 380.144; MSA 15.4144).

REFERENCE FOR POINTS IN HEADNOTE
64 Am Jur 2d, Public Securities and Obligations § 120.

*Donald G. Jennings,* for plaintiffs.

*Thrun, Maatsch & Nordberg* (by *Patrick J. Berardo),* for defendant Onekama Consolidated Schools.

Amicus Curiae: Michigan Attorney General (by *Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Milton I. Firestone* and *Craig Atchinson,* Assistants Attorney General).

Before: BASHARA, P. J., and M. J. KELLY and ALLEN, JJ.

PER CURIAM. Defendant Onekama Consolidated Schools appeals from a pretrial summary judgment granted to plaintiffs, enjoining defendant from issuing its bonds to finance the construction of an elementary school and the improvement of a high school. This litigation was initiated when the defendant decided to issue the bonds, notwithstanding an expression of voter disapproval given in three referendums.

Plaintiffs contend that Const 1963, art 9, § 6[1] prohibits the issuance of the bonds by defendant

---

[1] The text of that provision pertinent to this controversy reads as follows:

"Except as otherwise provided in this constitution, the total amount of general ad valorem taxes imposed upon real and tangible personal property for all purposes in any one year shall not exceed 15 mills on each dollar of the assessed valuation of property as finally equalized. Under procedures provided by law, which shall guarantee the right of initiative, separate tax limitations for any county and for the townships and for school districts therein, the aggregate of which shall not exceed 18 mills on each dollar of such valuation, may be adopted and thereafter altered by the vote of a majority of the qualified electors of such county voting thereon, in lieu of the limitation hereinbefore established. These limitations may be increased to an aggregate of not to exceed 50 mills on each dollar of valuation, for a period of not to exceed 20 years at any one time, if approved by a majority of the electors, qualified under Section 6 of Article II of this constitution, voting on the question."

without prior approval of the voters where the 15 mill limitation will be exceeded to pay the principal and interest of the bonds. The record indicates, and defendant acknowledges, that ad valorem taxes in addition to the 15 mill limitation will be necessary to pay the bond obligations.

In response, defendant maintains that the second paragraph of that same constitutional provision refutes plaintiffs' claim.[2] Further, defendant argues that enabling legislation obviates the need for voter approval where the total bond indebtedness of the school district is less than or equal to five percent of the state equalized valuation of all property located within the district, citing MCL 340.77a; MSA 15.3077(1).[3]

While Const 1963, art 9, § 6 provides ad valorem tax limitations and an exemption from those limits for the payment of bonds, it neither addresses nor prescribes criteria for the valid issuance of bonds. Its only relevant intent was to establish unlimited tax support for bond issues of local governmental units. See Convention Comment, 2 MCLA, p 547, *Butcher v Township of Grosse Ile,* 387 Mich 42, 58; 194 NW2d 845 (1972).

Corporate public units are granted express power under the Constitution to borrow money. Const 1963, art 9, § 13. That power is subject only

"The foregoing limitations shall not apply to taxes imposed for the payment of principal and interest on bonds or other evidences of indebtedness or for the payment of assessments or contract obligations in anticipation of which bonds are issued, which taxes may be imposed without limitation as to rate or amount; or to taxes imposed for any other purpose by any city, village, charter county, charter township, charter authority or other authority, the tax limitations of which are provided by charter or by general law."

[2] *Id.*

[3] This statute is § 77a of the School Code of 1955, 1955 PA 269, which was repealed and replaced by the School Code of 1976, 1976 PA 451, § 1851. A provision similar to § 77a is contained in the new code at § 144 and, as applied to the facts of this case, has an identical operative effect. *See* MCL 380.144; MSA 15.4144.

to the other pertinent constitutional provisions and legislative enactment. *Id.*

More specifically addressed to the issuance of bonds by a school district is Const 1963, art 9, § 16. The third paragraph of that section provides:

"The term 'qualified bonds' means general obligation bonds of school districts issued for capital expenditures, including refunding bonds, issued prior to May 4, 1955, *or issued thereafter and qualified as provided by law* pursuant to Section 27 or Section 28 of Article X of the Constitution of 1908 *or pursuant to this section."* (Emphasis added.)

Its fifth and sixth paragraphs, respectively, state as follows:

"Subject to the foregoing provisions, the legislature shall have the power to prescribe and to limit the procedure, terms and conditions for the qualification of bonds, for obtaining and making state loans, and for the repayment of loans."

"The power to tax for the payment of principal and interest on bonds hereafter issued which are the general obligations of any school district, including refunding bonds, and for repayment of any state loans made to school districts, shall be without limitation as to rate or amount."

Pursuant to the foregoing constitutional authority, the Legislature enacted § 77a of the School Code of 1955.[4] The record establishes that the bonds sought to be issued by defendant are in compliance with that enactment. Consequently,

---

[4] MCL 340.77a; MSA 15.3077(1), which reads in pertinent part:

"The board of a school district of the fourth class operating a K-12 program has the power and duty: * * *

(b) To borrow, subject to the provisions of Act No. 202 of the Public Acts of 1943, as amended, such sums of money as it deems necessary to purchase sites for buildings, playgrounds, athletic fields or agricultural farms, and to purchase or erect and equip any building which it is authorized to purchase and erect, or to make any permanent

the bond issue was within the defendant's constitutional and statutory authority,[5] and defendant's motion for summary judgment should have been granted.

We have profound appreciation and respect for the trial court's concern that the will of the people, as expressed through their vote, be honored as the guiding force of our democratic society. However, our decision neither presages a demise of democracy nor constitutes an incursion upon the role of the people as the source of governmental power. It was a vote of the people that adopted our present Constitution, and it is that document that governs the resolution of the merits of this litigation.

Although plaintiffs' resort to the judiciary is unavailing, other remedies may be pressed upon the Legislature. We retain confidence in that representative forum's adherence to the principles of democracy.

Since we find the defendant's proposed bond issue to be within its constitutional and statutory

---

improvement which it is authorized to make, and to accomplish this by the issue and sale of bonds of the school district in such form or on such terms as the board deems advisable, or by any other reasonable means. No loan shall be made and no bonds shall be issued for a longer term than 30 years nor for any sum which, together with the total outstanding bonded indebtedness of the district, shall exceed 5% of the state equalized valuation of the taxable property within the district, unless the proposition of making such loans or of issuing bonds has been submitted to a vote of the school tax electors of the district at a general or special school election and approved by the majority of the electors voting on the question. In such case loans may be made or bonds may be issued for the purposes hereinbefore set forth in an amount equal to that provided by Chapter 12 of part 2."

[5] It should be noted that the Michigan Municipal Finance Commission was joined as a party defendant to these proceedings. That Commission has recognizable expertise regarding bond matters and the constitutional power of municipal units to issue bonds. That Commission has taken a position consistent with this opinion.

authority, we reverse the judgment of the trial court and dismiss the plaintiffs' action.

Reversed. No costs, a public question being involved.